This case is an appeal from the entry of a summary judgment in favor of the defendant hospital. The facts from which the dispute arose occurred in early August of 1970. The plaintiff was being treated in the defendant hospital for a sprained left knee. She maintains that while she was in the hospital a brown recluse spider bit the calf of her right leg, causing her serious injury. She sued the hospital claiming damages for negligence or breach of implied contract. In March of 1973, a jury awarded her $10,000.
The trial judge, however, granted the hospital's motion for a new trial on the grounds that (1) the evidence failed to show a breach of duty by the hospital, and (2) the verdict and judgment was contrary to the weight of the evidence. The Alabama Court of Civil Appeals affirmed the granting of a new trial. Wilbanks v.Hartselle Hospital, Inc., 54 Ala. App. 630, 312 So.2d 29 (1975). The case went back to the trial court, and on September 30, 1975, the trial judge granted the hospital's motion for summary judgment, which is the order under review in this appeal.
The requisites for the entry of a summary judgment under Rule 56, ARCP, are "* * * that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The comments to Rule 56 make it clear that if there is a scintilla of evidence supporting the non-moving party, a summary judgment is inappropriate. In this case, we are fortunate to have a full *Page 872 
record from which to make our determination. Not only has the case already been tried, but the plaintiff candidly admits that a second trial will produce the same evidence which resulted in the granting of the hospital's motion for a new trial. We can examine the record of the March 1973, trial to determine whether the hospital was entitled to judgment, as a matter of law.
Some of the facts are not disputed. Everyone agrees that the plaintiff was a patient in the hospital from July 31, through August 5, 1970. On the first or second of August, the plaintiff felt a chill during the night and asked a nurse to bring her a blanket. The nurse got a blanket from the linen closet in the basement of the hospital and spread it over Mrs. Wilbanks from the waist down. Mrs. Wilbanks testified she stayed in bed all night and when she woke up the next day, she had a bite on her right leg. This portion of her testimony was disputed. The nurse who got the blanket testified that on the night in question, she saw Mrs. Wilbanks in the hall and in the patio behind the hospital. Another hospital employee testified that Mrs. Wilbanks told her that she did not know when she was bitten. A third witness testified that Mrs. Wilbanks said she was bitten before she came into the hospital.
There is no dispute about the fact that Mrs. Wilbanks was seriously injured. The plaintiffs support their position that the injury was caused by the bite of a brown recluse spider by citing the hospital records, which state:
 "* * * [P]ossibility of brown recluse spider bite is entertained."
 "* * * [H]as one-half by one-half centimeter ulceration of right lower leg where she thinks something bit her."
"* * * [E]tiology unknown, possibly spider."
The plaintiffs also rely upon the testimony of a medical doctor who testified that the attending physician told him that he "felt like she had been bitten by a brown recluse spider." This testimony was inadmissible, as hearsay. Prince v. Lowe, 263 Ala. 410, 82 So.2d 606 (1935); Clark v. Hudson, 265 Ala. 630,93 So.2d 138 (1957).
The hospital argues that there was a failure of proof as to what caused the plaintiff's injury. The evidence is that the brown recluse spider, as its name indicates, is non-aggressive and that it avoids activity, and well-lit places as much as possible. Treatment and control of the brown recluse spider is quite difficult because its inactivity makes it unlikely that the spider will come in contact with pesticides. The testimony was that these spiders are normally found in dark places. The evidence showed that they are likely to be found in a barn or woods, but could be brought into a hospital on luggage or flowers. If such a spider were brought into a hospital, it would likely seek a secluded spot to remain until it died.
About four years prior to Mrs. Wilbanks' injury, there was an outbreak of brown recluse spiders in several southern states, including northern Alabama. This fact was published in local newspapers about three years before the injury. Two years before the injury, Cook's Pest Control, with which the hospital had a contract from 1960 to February, 1970, sent a circular to all of its customers describing the brown recluse spider. During the time when the incident occurred and from February 1970, until June 1971, two maintenance men at the hospital performed the hospital's exterminating work. They followed a routine similar to that of Cook's employees. The contract the hospital had with Cook's was similar to the contracts other hospitals in the area carried. These contracts protected against ants, rats, mice and roaches, but did not provide spider control. Cook's procedure provided that, if they saw spiders, they would bring it to the attention of the customer. If the customer then elected not to get spider protection, *Page 873 
Cook's would put a notation on the contract, "No spider coverage." The hospital contract contained no such notation.
The only insects anyone reported having seen in the hospital were silver fish and "water bugs." These were seen in the storage area near the kitchen.
Since the case is before this Court upon the granting of a summary judgment, we must view the evidence in the light most favorable to the non-moving party.
There is a scintilla of evidence that Mrs. Wilbanks was bitten by a brown recluse spider while in the hospital; therefore, for the purposes of this opinion, we assume that is what happened. The fact of a bite is not dispositive.
The issue in this appeal is whether the hospital exercised that degree of care "which persons of common prudence, engaged in the hospital business, exercise under like conditions." MobileInfirmary v. Eberlein, 270 Ala. 360, 367, 119 So.2d 8 (1960). We conclude from the evidence, that there is not a scintilla of evidence that the hospital failed to meet its standard of care. No one who testified at the trial had ever seen a spider in the defendant hospital. The hospital is a clean, modern, well-lit facility, which brown recluse spiders would not be likely to inhabit. Therefore, we conclude that there was not a scintilla of evidence tending to show that the hospital failed to meet that degree of care, skill and diligence which persons of common prudence, engaged in the hospital business, exercise under like conditions.
For the reasons above-stated, we affirm the trial judge's granting of a summary judgment.
AFFIRMED.
HEFLIN, C.J., and BLOODWORTH, FAULKNER, JONES, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.